UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEXUAL SIN DE UN ABDUL BLUE,

        Plaintiff,                                     Civil Action No. 16-CV-10526

vs.                                               HON. MARK A. GOLDSMITH

CITY OF RIVER ROUGE, et al.,

        Defendants.

_____/

**OPINION AND ORDER
(1) SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S
OBJECTIONS (Dkt. 50), (2) ACCEPTING IN PART AND REJECTING IN PART THE
RECOMMENDATION IN THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION (Dkt. 49), (3) GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 23), AND
(4) GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. 23)**

Plaintiff Sexual Sin De Un Abdul Blue, proceeding pro se, filed this civil rights case against Defendants pursuant to 42 U.S.C. § 1983, alleging false arrest and other claims. The claims stem from his arrest for trespass during the course of a landlord-tenant dispute in which Blue's tenant claimed that Blue wrongfully evicted her. See Am. Compl. (Dkt. 19).

The matter was referred to Magistrate Judge Mona K. Majzoub for all pretrial proceedings. See Order of Referral (Dkt. 7). The magistrate judge issued a Report and Recommendation ("R&R") (Dkt. 49), recommending that Defendants' motion for summary judgment on Claims 1-5 and motion to dismiss Claims 6 and 7 (Dkt. 23) be granted.[1] Blue filed an objection to the R&R (Dkt. 50). Defendants subsequently filed a response (Dkt. 52). The Court reviews de novo any portion of the R&R to which specific objections are filed. Fed. R. Civ. P. 72(b)(3). For the reasons

---

[1] Claims 1-5 allege false arrest, false imprisonment, malicious prosecution, wrongful use of judicial process, and interference with a contractual relationship; Counts 6 and 7 request costs and attorney fees.

1

discussed below, the Court accepts in part and denies in part the recommendation contained in the R&R, grants in part and denies in part Defendants' motion for summary judgment, and grants Defendants' motion to dismiss.

## I. BACKGROUND

In May 2012, Blue began renting an apartment located at 50 Orchard Street in Ecorse, Michigan, to Jennifer Gondenoky. 3/22/13 Hr'g Tr., Ex. 1 to Pl. Resp., at 6 (Dkt. 35-1). In February 2013, Blue initiated an eviction proceeding in Michigan's 25th District Court for nonpayment of rent. Am. Compl. ¶ 9. At the conclusion of a March 22, 2013 eviction hearing, the court entered a judgment ordering Gondenoky to pay Blue $2,436. Judgment, Ex. 1 to Defs. Mot., at 2 (cm/ecf page) (Dkt. 23-3). The judgment stated that if Gondenoky did not pay that amount to Blue by April 30, 2013, the court would issue a writ of eviction, provided that Blue presented proof to the court that he had paid to have the property inspected. Id.

In a sworn affidavit, Blue states that on March 28, 2013, he and Gondenoky executed an agreement for Gondenoky to surrender the apartment immediately. Pl. Aff., Ex. A. to Pl. Resp., ¶ 3 (Dkt. 35); see also 3/28/13 Agreement, Ex. C. to Pl. Obj., at 7 (cm/ecf page) (Dkt. 50). The alleged agreement states that on March 28, 2013, Gondenoky vacated the apartment and "returned possession of the premises to the owner." 3/28/13 Agreement at 7 (cm/ecf page).

On March 31, 2013, Officer Edward Otis of the River Rouge Police Department was dispatched to 50 Orchard Street to investigate a landlord-tenant dispute. See 3/31/13 Police Report, Ex. 2. to Defs. Mot., at 3 (Dkt. 23-4). Upon arriving at the apartment, Otis observed "a large pile of furniture, clothing, children toys [sic], and other miscellaneous items on the sidewalk" in front of the property. Id. Otis then spoke with the complainant, Ryan Gregory, who informed Otis that he lived in the apartment with his fiancée, Gondenoky, and that the items on sidewalk

belonged to them. Id. Gregory told Otis that Blue had moved the items there without any advance notice or permission. Id. Contrary to Gregory's version of the events, Blue states that none of Gondenoky's property was in the apartment on March 31, 2013, because she had already moved out on March 28, 2013 pursuant to their agreement. Pl. Aff. ¶ 5.

Otis then went inside the apartment to speak with Blue. Id. Although Blue states that he presented Otis with a copy of a quitclaim deed as proof of his ownership of the property, Pl. Aff. ¶ 4, Otis stated in his police report that he was not provided with this documentation, 3/31/13 Police Report at 3. In an unsworn declaration, Otis states that Blue also did not provide him with a court order permitting him to evict Gondenoky and Gregory. Otis Decl., Ex. 18 to Defs. Reply, ¶ 7 (Dkt. 38-9). Blue and Otis agree that Blue showed Otis a copy of the purported agreement between Blue and Gondenoky in which Gondenoky agreed to surrender the apartment. Id.; Pl. Aff. ¶ 4. Otis then advised both Blue and Gregory that they needed to resolve the matter in court. 3/31/13 Police Report at 3. Otis told Blue not to return to the property "without the proper eviction documentation." Otis Decl. ¶ 6.

Otis did not return to court, but the next day Gondenoky did. At a hearing on the morning of April 1, 2013, Gondenoky complained to the state judge that Blue had evicted her, thrown her belongings on the street, and broken her daughter's bed. 4/1/13 Hr'g Tr., Ex. 15 to Defs. Reply, at 4-5 (Dkt. 38-6). In regard to the purported agreement to surrender the apartment, Gondenoky testified that Blue "was trying to trick me just to get my signature." Id. at 8.[2] At the conclusion

---

[2] Gondenoky elaborated on this at a subsequent hearing, on April 11, 2013, claiming that the purported agreement to surrender the apartment was not the agreement she had signed with Blue. 4/11/13 Hr'g Tr., Ex. 16 to Defs. Reply, at 8 (Dkt. 38-7). While Gondenoky conceded that she signed the agreement, she testified that the text of the agreement had been altered after she signed. Id. Gondenoky testified that the original agreement gave her 30 days from March 28, 2013 to surrender the apartment; the agreement presented by Blue stated that Gondenoky vacated the premises that day. Id.

3

of the April 1, 2013 hearing, the court stayed the writ of execution and set a hearing regarding wrongful eviction. 4/1/13 Hr'g Tr. at 8. However, nothing in the records shows that Otis or other officers knew that Gonenoky disputed the validity of the agreement or that the state court had set a wrongful eviction hearing.

At 5:30 p.m. on April 1, 2013, while on patrol in the area, Otis observed Blue back in the apartment. 4/1/13 Police Report, Ex. 3 to Defs. Mot., at 4 (Dkt. 23-5). Otis and Defendant Officer Copeland subsequently approached the home. As Otis knocked on the front door of the apartment, he heard someone going down the basement stairwell. Id. After knocking again, Otis and Copeland were met by two individuals, Nolan Hardie and Jasmine Smith, who claimed that they were the apartment's new tenants. Id. While the officers were informed that Blue was not on the premises, they heard noise coming from the basement of the apartment. Id. Upon entering the basement, Copeland found Blue behind a furnace and escorted him to the front door. Id. Otis then asked Blue if he had "any judicial paperwork that allowed him to enter" the apartment. Id. Blue responded by telling Otis that his lawyer advised him that he could go into the apartment. Id. When asked why he was hiding in the basement, Blue refused to answer. Id. Otis then advised Blue that he was under arrest. Id.

## II. ANALYSIS

### A. Blue's Objections

Blue first contends that he was not provided with notice that he would be subject to arrest for trespassing upon his own property and, without such notice, he could not have been trespassing. Pl. Obj. at 4 (cm/ecf page). Blue also objects to the magistrate judge's conclusion that there was probable cause to arrest him. Id. Within his objection, Blue makes a cursory argument that the state district court judge "impermissibly entered a guilty plea on behalf of the Plaintiff in the

4

Trespass case in an attempt to cover up the false arrest." Id. Blue also argues that Otis improperly brought the trespass charge against him and questions the wisdom of preventing landlords from negotiating with tenants during the course of evictions proceedings. Id. Blue requests that this Court reject the magistrate judge's R&R and proceed to trial. Id.

### B. Discussion

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making this determination, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." U.S. S.E.C. v. Sierra Brokerage Servs., Inc., 712 F.3d 321, 327 (6th Cir. 2013). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). In considering the material facts in the record, the court must recognize that "[t]he mere existence of a scintilla of evidence in support of the [movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." Id. at 422. Furthermore, the movant "cannot rely on conjecture or conclusory accusations." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008).

#### 1. Notice

In his objection, Blue argues that the elements of trespass were not met because he did not receive notice that entering the apartment would constitute trespassing. Michigan law prohibits a person from entering "the lands or premises of another without lawful authority after having been forbidden to do so by the owner or occupant or the agent of the owner or occupant." Mich. Comp. Laws § 750.552(1)(a). It is also illegal to "[r]emain without lawful authority on the land or

5

premises of another after being notified to depart by the owner or occupant or the agent of the owner or occupant." Mich. Comp. Laws § 750.552(1)(b).

Blue's contention — that he was required to receive notice that he would be subject to arrest for trespassing if he entered the apartment — is erroneous. The statute merely requires that the individual enter the premises "after having been forbidden to do so by the owner or occupant." Mich. Comp. Laws § 750.552(1)(a). This means that the individual must be on notice that he may not enter the premises. There is no requirement in the statute that the individual be apprised of the legal consequences of reentering the property before he can be arrested for trespassing. This objection is without merit.[3]

### 2. Probable Cause

Blue next argues that there was no probable cause for his arrest. See Pl. Obj. at 4 (cm/ecf page). "A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform 'a prudent person, or one of reasonable caution,' that the suspect 'has committed, is committing, or is about to commit an offense.'" Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir. 2002) (quoting Michigan v. DeFillippo,

---

[3] Although Blue claims he had a right to be on the property as its owner, Pl. Obj. at 2 (cm/ecf page), his status as owner of the property does not immunize him from liability for trespass. A landlord can be held liable for trespass under civil law. Maney v. Lamphere, 102 N.W. 974 (Mich. 1905) (holding that landlord committed a trespass when he entered property while tenant was still in lawful possession). While recognizing a landlord's ongoing claim to title, the law of trespass protects the tenant's possessory interest, which is distinct from title. Radvansky v. City of Olmsted Falls, 395 F.3d 291, 303 (6th Cir. 2005) ("Trespass is an invasion of the possessory interest of property, not an invasion of title."). Like the law of other states, Michigan law protects the tenant's possessory interest by restricting the entry of landlords onto leased premises during a dispute with a tenant. See Mills v. Cnty. of Lapeer, 498 F. App'x 507, 513 (6th Cir. 2012) ("Michigan has a clearly expressed public policy in favor of eviction by judicial process in nearly all situations."); see also Folgueras v. Hassle, 331 F. Supp. 615, 624-625 (W.D. Mich. 1971) ("'[The tenant] is owner of an estate for the time being, and has all the usual rights and remedies of an owner to defend his possession.'") (quoting Morrill v. Mackman, 24 Mich. 279, 284 (1872)). Given this authority, Blue's contention that he is somehow insulated from the reach of Michigan's criminal trespass law is without merit.

443 U.S. 31, 37 (1979)). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995).

Because the Court concludes that a reasonable jury could find that Defendant officers lacked probable cause, Defendants are not entitled to summary judgment. In his March 31, 2013 police report, Otis stated that he was dispatched to the apartment to address a landlord-tenant dispute. 3/31/13 Police Report at 3. When he arrived at the scene, Otis was informed by Gregory that Blue had removed his and Gondenoky's belongings from the apartment without permission or forewarning. Id.

After observing furniture and other belongings on the sidewalk, Otis went inside the apartment to speak with Blue. Id. When Otis asked Blue what was going on, Blue presented him with the March 28, 2013 agreement between him and Gondenoky in which Gondenoky purportedly agreed to immediately vacate the premises. Id. While Gondenoky later testified that Blue had tricked her into signing the agreement by altering its text after she signed, Otis was unaware of this fact when he encountered Blue on March 31, 2013 or April 1, 2013. 4/1/13 Hr'g Tr. at 8; 4/11/13 Hr'g Tr. at 8.

Without making an attempt to ascertain whether the agreement was enforceable, Otis ordered Blue not to return to the property without a court order. 3/31/13 Police Report at 3. The Court is unaware of any authority that allows an officer to order a landlord to obtain a writ of eviction after the landlord has presented an agreement for the tenant to vacate the premises. Indeed, the March 22, 2013 judgment from the state district court only required Blue to obtain a writ of eviction if Gondenoky failed to pay rent or surrender the apartment by April 30, 2013. Judgment at 2 (cm/ecf page). The March 28, 2013 agreement presented to Otis indicated that

7

Gondenoky had voluntarily surrendered the apartment. While Otis states in his unsworn declaration that he learned from the River Rouge Building Department on March 31, 2013 that Blue no longer owned the property, Otis Decl. ¶ 5, he does not indicate whether he inquired regarding a potential right of redemption or asked Blue whether he had title to the property.[4] Further, Otis's declaration does not indicate whether he determined who the actual owner was, and whether, as required for liability under the trespassing statute, that owner instructed Blue not to enter or remain on the property. Moreover, neither Gregory nor Gondenoky complained to anyone — and certainly not to Otis — that Blue was not the lawful owner of the property.

Because there is more than one reasonable determination regarding the existence of probable cause, this question must be decided by the trier of fact. Pyles, 60 F.3d at 1215.

### 3. Qualified Immunity

Defendant officers assert that even if they lacked probable cause to arrest Blue, they are entitled to qualified immunity.[5] Pl. Br. at 14 (Dkt. 23-1). Once a defendant raises a qualified immunity defense, the plaintiff bears the burden of demonstrating that it does not apply. Rodriguez v. Passinault, 637 F.3d 675, 689 (6th Cir. 2011). In order to defeat a defense of qualified immunity, the plaintiff must satisfy the following two-part test: (i) first, that the defendant violated a constitutional right, and (ii) the right at issue was "clearly established" at the time of the misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled in part by Pearson v. Callahan,

---

[4] Defendants have presented evidence that the property was forfeited to the Wayne County Treasurer for failure to pay property taxes on March 1, 2013, and that the property became "titled absolutely" in the treasurer's name on March 31, 2013. 3/31/13 Certificate of Forfeiture, Ex. 8 to Defs. Mot., at 3 (cm/ecf page) (Dkt. 23-10). However, as noted above, there is no evidence indicating that Otis was aware of this fact at the time he placed Blue under arrest.

[5] The magistrate judge did not reach a conclusion regarding qualified immunity after determining that Defendant officers had probable cause to arrest Blue. See R&R at 15 ("Defendants are therefore entitled to summary judgment on Claims 1-3 of the First Amended Complaint and do not need qualified immunity.").

8

555 U.S. 223, 236 (2009)). While the Court in Saucier mandated that the two steps be addressed in order, the Court in Pearson held that courts have discretion regarding which step to address first. Id. at 236.

As noted above, the facts before this Court indicate that a trier of fact could reasonably determine that Defendant officers violated Blue's constitutional right when they arrested him without probable cause. Blue must next demonstrate that this right was clearly established at the time of his arrest. "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir. 2002). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." Skovgard v. Pedro, 448 F. App'x 538, 546 (6th Cir. 2011) (quotation marks omitted). "If the plaintiff can establish that a constitutional violation occurred, a court should ask 'whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition.'" Lyons v. City of Xenia, 417 F.3d 565, 571 (6th Cir. 2005) (quoting Saucier, 533 U.S. at 201).

Courts in this circuit have consistently held that the right to be free from an arrest lacking probable cause is clearly established. See Sutton v. Metro. Gov't of Nashville & Davidson Cnty., 612 F. App'x 308, 317 (6th Cir. 2015) ("At the time of Sutton's arrest, the law was clearly established that an officer needed probable cause, i.e., a reasonable belief that the plaintiff had committed a crime, based on the totality of the circumstances, including both inculpatory and exculpatory evidence."); see also McMorris v. Fries, No. 14-CV-11134, 2015 WL 3915817, at *5 (E.D. Mich. June 25, 2015) ("Long before the incident here occurred in December 2013, 'the law

9

was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual.'") (quoting Estate of Dietrich v. Burrows, 167 F.3d 1007, 1012 (6th Cir. 1999)). As a result, it cannot be said that Defendant officers are entitled to qualified immunity.

### 4. Malicious Prosecution

Blue also argues that Otis improperly brought the trespass charge against him. In order to succeed on a malicious prosecution claim premised on a Fourth Amendment violation, a plaintiff must show that (i) a criminal prosecution was initiated against him and that the defendant made, influenced, or participated in the decision to prosecute, (ii) there was a lack of probable cause for the prosecution, (iii) the plaintiff was deprived of liberty apart from the initial seizure, and (iv) the prosecution was resolved in the plaintiff's favor. Sykes v. Anderson, 625 F.3d 294, 308-309 (6th Cir. 2010).

As noted in the R&R, Blue's malicious prosecution claim against Defendant officers fails because he has not presented any evidence that the officers made, influenced, or participated in the decision to prosecute. All of the evidence presented against Defendant officers pertains to their actions while placing Blue under arrest, not whether they played any role in Blue's prosecution. As a result, Blue's malicious prosecution claim fails.[6]

### 5. State-Law Claims

Because Blue's pendent state law claim of wrongful use of judicial process is also based on the criminal prosecution of Blue, rather than his arrest, this claim also fails. See Wallace v. Kato, 549 U.S. 384, 390 (2007) ("If there is a false arrest claim, damages for that claim cover the

---

[6] Blue also argues that the state district court judge impermissibly entered a guilty plea on his behalf. Pl. Obj. at 4 (cm/ecf page). However, Blue has not named the judge as a defendant in this case.

10

time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.").

However, the Court rejects the magistrate judge's recommendation to dismiss Blue's claim for interference with a contractual relationship. "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." Health Call of Detroit v. Atrium Home & Health Care Servs., Inc., 706 N.W.2d 843, 848-849 (2005). There is evidence in the record to support the existence of a lease between Blue and Hardie and Smith. Otis stated that when he went to the property on April 1, 2013, he encountered Hardie and Smith, who claimed they were Blue's new tenants. 4/1/13 Police Report at 4. After Otis placed Blue under arrest, he ordered Hardie and Smith to remove their things from the apartment until the matter was resolved in court. Id. This constituted a breach of the lease. Further, because a reasonable jury could find that Defendant officers lacked probable cause for Otis's arrest, it could find that the officers' instigation of the breach was unjustified. It follows that if Blue's arrest was unjustified, instigating the breach of Blue's new lease was unjustified as well. As a result, Blue's claim for tortious interference with a contractual relationship survives summary judgment.

### C. Failure to Object

Because Blue does not contest the magistrate judge's recommendation to dismiss Claims 6 and 7 in his objection, the Court adopts the R&R regarding the dismissal of those claims. See Lardie v. Birkett, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002) ("As to the parts of the report and recommendation to which no party has objected, the Court need not conduct a review by any standard."). Blue has also failed to object to the dismissal of the River Rouge Police Department,

11

the City of River Rouge, and John Does 1-10; the Court therefore adopts the R&R regarding dismissal of those parties. Similarly, Defendants have not objected to the magistrate judge's recommendation that their request for attorney fees be denied. As a result, the Court adopts this recommendation as well.

### III. CONCLUSION

For the foregoing reasons, the Court sustains in part and overrules in part Blue's objections (Dkt. 50), rejects in part and accepts in part the recommendation contained in the magistrate judge's R&R (Dkt. 49), grants in part and denies in part Defendants' motion for summary judgment (Dkt. 23), and grants Defendants' motion to dismiss (Dkt. 23).

SO ORDERED.

Dated: March 28, 2017           s/Mark A. Goldsmith
Detroit, Michigan               MARK A. GOLDSMITH
                                United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 28, 2017.

                                s/Karri Sandusky
                                Case Manager