UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEXUAL SIN DE UN ABDUL BLUE,

        Plaintiff,

vs.

CITY OF RIVER ROUGE, et al.,

        Defendants.
_____/

Case No. 16-cv-10526
HON. MARK A. GOLDSMITH

# OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION (Dkt. 56)

Before the Court is Defendants' motion for reconsideration (Dkt. 56), which asks the Court to reconsider its March 28, 2017 decision sustaining in part and overruling in part Plaintiff Sexual Sin De Un Adbul Blue's objections, accepting in part and rejecting in part the recommendation contained in the Magistrate Judge's Report and Recommendation ("R&R"), granting in part and denying in part Defendants' motion for summary judgment, and granting Defendants' motion to dismiss. See 3/28/2017 Op. & Order (Dkt. 53). Pursuant to this Court's order, see 9/12/2017 Order (Dkt. 100), Blue filed a response (Dkt. 103). For the reasons stated below, the Court grants in part and denies in part Defendants' motion for reconsideration.

## I. ANALYSIS

Motions for reconsideration may be granted when the moving party shows: (i) a palpable defect; (ii) by which the court and the parties were misled; and (iii) the correction of which will result in a different disposition of the case. E.D. Mich. LR 7.1(h)(3). A "palpable defect" is a "defect which is obvious, clear, unmistakable, manifest or plain." Olson v. The Home Depot, 321 F. Supp. 2d 872, 874 (E.D. Mich. 2004). Defendants also argue that they are entitled to relief

1

under Federal Rule of Civil Procedure 59(e), which allows for motions to alter or amend a judgment. These motions are generally granted when one of the following circumstances arises:

> (1) an intervening change in the controlling law; (2) evidence not previously available has become available; or (3) necessity to correct a clear error of law or prevent manifest injustice.

Nagle Indus., Inc. v. Ford Motor Co., 175 F.R.D. 251, 254 (E.D. Mich. 1997) (citing Keweenaw Bay Indian Cmty. v. United States, 940 F. Supp. 1139, 1141 (W.D. Mich. 1996)). "Such motions, however, are 'not intended as a vehicle to relitigate previously considered issues;' 'should not be utilized to submit evidence which could have been previously submitted in the exercise of reasonable diligence' and are not the proper vehicle to attempt to obtain a reversal of a judgment 'by offering the same arguments previously presented.'" Id. (quoting Keweenaw Bay, 904 F. Supp. at 1141).

In their motion, Defendants contend the following: (i) Defendant officers had probable cause to arrest Blue; (ii) the officers acted with qualified immunity; (iii) Blue's claims of false arrest and false imprisonment are barred by the applicable statute of limitations; and (iv) Blue's claim for tortious interference with a contractual relationship should be dismissed because he did not have a valid lease with his new tenants.

**A. Probable Cause**

Defendants largely reargue the issue of probable cause. "A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform 'a prudent person, or one of reasonable caution,' that the suspect 'has committed, is committing, or is about to commit an offense.'" Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir. 2002) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). "In general, the

existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995).

In their response to Blue's objections, Defendants argued that Defendant Officer Edward Otis had probable cause to arrest Blue because, the day prior to Blue's arrest, Otis learned that Blue had removed the belongings of his previous tenants, Jennifer Gondenoky and Ryan Gregory, and changed the locks without their permission. Defendants also noted that, when prompted by Otis, Blue could not produce an order of eviction. After Otis was shown the purported agreement between Blue and Gondenoky, Otis deemed the agreement to be insufficient and ordered Blue not to return to the premises without an order of eviction. See Defs. Resp. at 10 (Dkt. 52). Defendants repeat these same factors in their motion for reconsideration. As noted above, motions to amend a judgment and for reconsideration are not intended as a vehicle to re-litigate past issues or offer the same previously presented arguments. Nagle, 175 F.R.D. at 254. As a result, the Court denies Defendants' motion as to this issue.

**B. Qualified Immunity**

Defendants first assert that Blue failed to meet his burden to establish that Defendant officers were not entitled to qualified immunity. However, Defendants already made this argument, stating in their reply brief that "Plaintiff is unable to meet such a burden because it was Plaintiff who was violating the law and probable cause existed for his arrest for trespassing. As such, Defendants are entitled to qualified immunity[.]" Defs. Reply at 7 (Dkt. 38). The Court has already ruled that Blue has raised a genuine issue regarding lack of probable cause for his arrest. Because the need for probable cause prior to a warrantless arrest was clearly established at the time of Blue's arrest, see Sutton v. Metro. Gov't of Nashville & Davidson Cnty., 612 F. App'x 308, 317 (6th Cir. 2015), Blue met his burden of showing a triable issue on probable cause, thus

3

precluding a pretrial ruling that Defendant officers were entitled to qualified immunity. Defendants' attempt to re-litigate this issue is not proper on a motion for reconsideration or to amend a judgment.

Alternatively, Defendants argue that even if Blue met his burden, they are still entitled to qualified immunity as long as their conduct was "objectively reasonable" in light of clearly established law. In addition to determining whether the defendant violated a clearly established constitutional right, courts in the Sixth Circuit also determine "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was not objectively reasonable in light of the clearly established constitutional rights." Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003)). "Whether an action was 'objectively reasonable' in light of clearly established rules is 'a fact-specific, case-by-case' inquiry focused on 'whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene.'" Marcilis v. Township of Redford, 693 F.3d 589, 598 (6th Cir. 2012) (quoting Cochran v. Gilliam, 656 F.3d 300, 306 (6th Cir.2011)).

Defendants have not established that the officers' conduct was objectively reasonable. Defendants note that Otis was informed by the city building department that Blue no longer owned the apartment, despite Blue's claims to the contrary. However, there is no evidence that Otis inquired into who actually owned the building and failed to determine whether that individual had ordered Blue off the property, as required by Michigan's trespassing statute. See Mich. Comp. Laws § 750.552(1)(a). Further, as noted in the Court's opinion, Otis made no further inquiry into whether Blue had a right of redemption to the property. Defendants' reliance on Otis's order to Blue not to return also lacks merit. Defendants still have not presented any authority that probable cause can be established when an officer orders a landlord not to reenter property after the landlord

has presented the officer with an agreement for the tenant to vacate the premises. In light of the clearly established right to be free from arrest without probable cause, it cannot be said that the actions of Otis and the other officers were objectively reasonable.

### C. Statute of Limitations

Defendants argue that Blue's false arrest and false imprisonment claims are barred by the statute of limitations. The Court did not address this issue in its prior opinion. It was not raised in Defendants' motion for summary judgment; the issue was first raised in Defendants' reply. "It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in the opposition." In re FirstEnergy Corp. Sec. Litig., 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004). Even assuming this claim was properly raised, it is without merit. "To determine the length of the period of limitations, "federal law looks to the law of the State in which the cause of action arose.'" Braxton v. Heritier, No. 14-12054, 2015 WL 3915857, at *2 (E.D. Mich. June 25, 2015) (quoting Wallace v. Kato, 549 U.S. 384, 387 (2007)). "[T]he Court of Appeals for the Sixth Circuit explained that 'the appropriate statute of limitations to be applied in all section 1983 actions is the state statute of limitations governing actions for personal injury . . . Michigan's three year statute of limitations for personal injury claims . . . governs section 1983 actions when the cause of action arises in Michigan.'" Id. (quoting McCune v. City of Grand Rapids, 842 F.3d 903 (6th Cir. 1988)). Blue's suit was filed on February 12, 2016, less than three years after his April 1, 2013 arrest. Therefore, his claims for false arrest and false imprisonment are not barred by the statute of limitations.

### D. Tortious Interference With a Contractual Relationship

Finally, Defendants argue that the Court improperly denied its motion for summary judgment as to Blue's claim for tortious interference with a contractual relationship. The Court agrees.

"The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." Health Call of Detroit v. Atrium Home & Health Care Servs., Inc., 706 N.W.2d 843, 848-849 (2005). Blue's tortious interference claim was based on Defendants' alleged interference with his lease with his new tenants. Defendants argue that there could not have been any interference with a contractual relationship because the lease between Blue and the new tenants did not constitute a valid contract. "A claim for tortious interference with contract requires the existence of a valid contract." Experian Mktg. Sols., Inc. v. Lehman, No. 1:15-CV-476, 2016 WL 2342186, at *2 (W.D. Mich. May 4, 2016). Defendants first argue that the contract was invalid because, at the time the lease was signed, the property had already been titled in the name of the Wayne County Treasurer. In support of this argument, Defendants provide a certificate from the Wayne County Treasurer which states that the property was forfeited to the county on March 1, 2013 for failure to pay the 2011 property taxes. See Quit Claim Deed and Certificate of Forfeiture, Ex. 8 to Defs. Mot., at 3 (cm/ecf page) (Dkt. 23-10). The certificate then states as follows:

> This property will be titled absolutely in the name of the Wayne County Treasurer if not redeemed on or before the March 31 immediately succeeding the entry in an uncontested case of a judgment foreclosing the property under MCL 211.78k, or in a contested case, 21 days after the entry of a judgment foreclosing the property under MCL 211.78k.

Id.

Defendants do not provide any evidence regarding whether or not Blue had redeemed the property prior to executing his lease with his new tenants. However, there is another ground on

which to declare Blue's lease invalid. On March 22, 2013, Michigan's 25th judicial district entered a judgment stating that Gondenoky, Blue's prior tenant, owed Blue $2,436 in back rent and court costs. 3/22/2013 Judgment, Ex. 1 to Def. Mot. at 2 (cm/ecf page) (Dkt. 23-3). The judgment stated that if Gondenoky did not pay Blue that amount on or before April 30, 2013, Blue could apply for a writ of eviction. Id. Significantly, the order also stated that Blue could not rent the property to new tenants until he received a certificate of occupancy. Id. It is undisputed that Blue never obtained such a certificate. As a result, his lease with his new tenants was executed in violation of a court order, and thus could not constitute a valid contract. Because there was no valid contract to be interfered with, the Court made a clear error of law in denying summary judgment as to this claim.[1] The Court grants Defendants' motion for reconsideration as to Blue's tortious interference with a contractual relationship claim.[2]

## II. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for reconsideration (Dkt. 56).

SO ORDERED.

Dated: September 27, 2017      s/Mark A. Goldsmith
Detroit, Michigan              MARK A. GOLDSMITH
                               United States District Judge

---

[1] Michigan courts have held that "[i]f there is no valid contract, a plaintiff can still establish tortious interference under a business relationship or expectancy theory." Baker v. Abramson, No. 262272, 2005 WL 3304563, at *3 (Mich. Ct. App. Dec. 6, 2005). Even if Blue had asserted such a claim (which he has not), it would fail for lack of the "existence of a valid business relationship." Id.

[2] In his response, Blue requests that this Court reconsider its dismissal of his claims for malicious prosecution, false arrest, and wrongful use of judicial process. He also requests reconsideration of the Court's dismissal of the City of River Rouge as a defendant. The Court did not dismiss Blue's claim for false arrest. Further, the time to file a motion for reconsideration has long since passed, and cannot be brought now in response to Defendants' motion. See E.D. Mich. LR 7.1(h)(1).

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 27, 2017.

s/Karri Sandusky<br>Case Manager