**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**SEXUAL SIN DE UN ADBUL BLUE,**

       **Plaintiff,**               **CIVIL ACTION NO. 16-cv-10526**

       **v.**                    **DISTRICT JUDGE MARK A. GOLDSMITH**

**RIVER ROUGE, CITY OF,** *et al.*,     **MAGISTRATE JUDGE MONA K. MAJZOUB**

       **Defendants.**

_____/

### REPORT AND RECOMMENDATION

Plaintiff Sexual Sin De Un Adbul Blue, proceeding *pro se*, filed this civil rights action against Defendants City of River Rouge, River Rouge Police Department, Officer Otis, Officer J. Copeland, Officer R.M. Miller, Sergeant Mitchell, and several John Does pursuant to 42 U.S.C. § 1983 on February 12, 2016, asserting claims of false and malicious arrest, false imprisonment, malicious prosecution, wrongful use of judicial process, and interference with a contractual relationship, as well as claims for attorney fees and punitive damages, with regard to his arrest and prosecution for trespassing. (Docket no. 1.)  At this juncture, the only claims that remain are Plaintiff's false arrest and false imprisonment claims against Defendants Otis, Copeland, Miller, and Mitchell.  (*See* docket nos. 53 and 107.)

Before the Court is Defendants' Motion for Summary Judgment Pursuant to Rule 56 (docket no. 110) and Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) for Plaintiff's Non-Compliance With Court Order (docket no. 126).  Plaintiff filed a Response and an Amended Response to Defendants' Motion for Summary Judgment, to which Defendants replied.  (Docket nos. 114, 115, 119.)  Plaintiff also filed two responses to Defendants' Motion to

Dismiss, the second of which is untimely but identical to the first, and it includes the exhibits with which Plaintiff purportedly had trouble submitting with the first response. (Docket nos. 129, 130.) Defendants replied to Plaintiff's responses. (Docket no. 131.) This action has been referred to the undersigned for all pretrial proceedings. (Docket no. 54.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons that follow, it is recommended that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) for Plaintiff's Non-Compliance With Court Order (docket no. 126) be **GRANTED** and that this matter be dismissed in its entirety. Additionally, it is recommended that Defendants' Motion for Summary Judgment Pursuant to Rule 56 on Claims 1 and 2 (docket no. 110) be **GRANTED** with regard to Plaintiff's claims against Defendant Miller and **DENIED** with regard to Plaintiff's claims against Defendants Otis, Copeland, and Mitchell.

## II.    REPORT

### A.    Facts and Procedural History

The Court previously set forth the facts of this matter in a Report and Recommendation regarding Defendants' initial Motion for Summary Judgment and to Dismiss:

#### 1.    *The Initial Landlord-Tenant Matter*

On or about February 2, 2013, Plaintiff filed an eviction notice to evict tenant Jennifer Gondenoky for non-payment of rent from Plaintiff's rental property located at 50 Orchard Street, Apartment 1 in River Rouge, Michigan. (Docket no. 19 ¶ 9.) Plaintiff and Ms. Gondenoky appeared in the 25th District Court before the Honorable Michael F. Ciungan on March 22, 2013, for a hearing on the matter. (Docket no. 19 ¶ 10; docket no. 35 at 21; docket no. 35-1 at 1-13.)

At the hearing, Ms. Gondenoky argued that Plaintiff did not own the property, but when prompted by the judge for a proof of ownership, Plaintiff presented a copy of a quit claim deed, dated May 15, 2012, which had been registered with Wayne County. (Docket no. 19 ¶¶ 11-12; docket no. 35-1 at 3-4, 7.) Ultimately, the judge ordered that Ms. Gondenoky pay Plaintiff $2,370.00 in past-due rent or move out by April 30, 2013. (Docket no. 19 ¶ 12; docket no. 23-3; docket no. 35-1 at 10.) The judge then advised Plaintiff that if Ms. Gondenoky did not pay by that date, then Plaintiff could apply for an order to evict Ms. Gondenoky and her personal property from the premises. (Docket no. 23-3; docket no. 35-1 at 11.) The judge added that before he would issue an order of eviction, Plaintiff must provide proof to the court that he paid to have the property inspected; the judge also advised Plaintiff that he could not re-rent the property unless he obtained a certificate of occupancy. (*Id*.) Lastly, Plaintiff asked the judge to impose an earlier payment deadline of April 2, 2013 on Ms. Gondenoky, but the judge denied his request. (Docket no. 19 ¶ 12; docket no. 35-1 at 11-12.)

### 2. *Plaintiff's Account of the Events Leading to his Arrest*

Plaintiff allegedly contacted Ms. Gondenoky on March 27, 2013 to work out arrangements for her to move prior to the court-imposed date of April 30, 2013. (Docket no. 19 ¶ 13.) According to Plaintiff, Ms. Gondenoky agreed to move the next day if Plaintiff paid her $200.00, to which Plaintiff agreed. (*Id*.) Plaintiff alleges that he and Ms. Gondenoky met at the subject property the next day, March 28, 2013 at approximately 1:00 p.m., at which meeting Plaintiff typed up the agreement on his laptop, the parties signed the agreement, and Plaintiff gave Ms. Gondenoky a check for $200.00. (*Id*. ¶¶ 13-14; *see* docket no. 35 at 19.) Plaintiff claims that Ms. Gondenoky then handed the keys to Plaintiff and vacated the property. (*Id*. ¶¶ 13, 15.)

On March 31, 2013, Plaintiff claims that he was at the rental property cleaning out the unit when four police cars pulled up to the property. (Docket no. 19 ¶ 16.) Plaintiff asserts that when the officers asked him what he was doing there, he replied that he was cleaning up his rental. (*Id*.) The officers asked Plaintiff if he had any documentation to show that he had a right to be there, and Plaintiff claims that he informed the officers that he owned the property and provided them with his "ownership papers." (*Id*.) Plaintiff alleges that Officers Otis and John Does 1-3 informed Plaintiff that he had tenants there and that he could not be on the property until after April 30, to which Plaintiff replied that Ms. Gondenoky had moved out; he then provided the officers with the agreement and the vacancy notice. (*Id*.) According to Plaintiff, one of the officers, either Defendant Otis or John Doe 1, 2, or 3, told him that the agreement was not legal and that Plaintiff needed a court order showing that the tenant had moved before Plaintiff could enter the property. (*Id*.) Plaintiff further alleges that either an unknown Doe officer or Defendant Otis told Plaintiff that they would not accept the agreement and told Plaintiff to get off the property immediately. (*Id*.)

The next day, April 1, 2013, Plaintiff returned to the rental property to clean out the unit and to sign a lease with new tenants. (Docket no. 19 ¶ 17.) Plaintiff alleges that by 1:00 p.m., the unit had been cleaned, the locks had been changed, and new tenants had moved in. (*Id.*) Plaintiff asserts that he then went downstairs to clean the basement of the rental property, which is a shared space between the two rental units therein. (*Id.*) Plaintiff claims that five to eight police officers showed up at the property about two hours later, that Defendant Otis and Defendants John Doe 3-10 jumped out of the police car with their guns drawn, and that they busted into the newly-rented unit and asked the new tenants what they were doing there. (*Id.*) According to Plaintiff, one of the new tenants, Nolan Hardie, advised the officers that they lived there along with Plaintiff and had just moved in that morning. (*Id.*) Plaintiff claims that an unknown John Doe officer asked Mr. Hardie where Plaintiff was, and at the same time, Plaintiff saw a flashlight shining down the basement stairs and he heard an officer telling him to put his hands in the air. (*Id.*) Plaintiff alleges that either Defendant Otis or Defendant Copeland grabbed Plaintiff around the neck, placed Plaintiff's hands behind his back, handcuffed him, and dragged him up the stairs. (*Id.*) Plaintiff claims that once they reached the top of the stairs, the officers told the new tenants to pack up their belongings and leave the apartment. Plaintiff alleges that when the tenants responded that they had did not have a car or any other way to move their belongings and their dogs, either Defendant Otis or Defendant Copeland gave them Plaintiff's car keys and told them that they had ten minutes to pack everything in the car and leave. (*Id.*)

### 3. Defendants' Account of the Events Leading to Plaintiff's Arrest

On March 31, 2013, Defendant Otis was dispatched to the subject property regarding a landlord-tenant dispute. (Docket no. 23-4 at 3.) Upon arrival, Defendant Otis observed a large pile of broken furniture, clothing, toys, and other items on the sidewalk in front of the property, purportedly belonging to Ms. Gondenoky and her boyfriend, Ryan Gregory. Defendant Otis also observed a small group of people standing outside the property. After speaking with the complainant, Mr. Gregory, Defendant Otis then went inside to ask Plaintiff what was going on. Plaintiff then produced a document that he had drafted, which stated that Ms. Gondenoky and Mr. Gregory had agreed to give up occupancy of their apartment. Plaintiff, however, could not provide any proof of ownership of the property. Defendant Otis then advised both Plaintiff and Mr. Gregory that they needed to resolve the matter in court. According to Defendant Otis, Mr. Gregory was allowed to put his belongings back into the apartment, and Plaintiff left the premises.

On April 1, 2013 at 10:15 a.m., Ms. Gondenoky appeared in the 25th District Court before the Honorable Michael F. Ciungan for a hearing regarding the prior day's events. (Docket no. 38-6.) According to the hearing transcript, Ms. Gondenoky testified that she had received a note from Plaintiff that he was

4

going to spray her apartment for pests, so she left her apartment open for him, but instead Plaintiff took her belongings out of the apartment, smashing her baby's bedding in the process, and then re-rented the apartment to new tenants.  Ms. Gondenoky also testified that she had until April 30, 2013 to pay her past-due rent, but Plaintiff evicted her, demolished her belongings, and changed the locks so she couldn't get back into the apartment.  The judge then stayed the writ of restitution, which was to issue on April 30, 2013, and set the matter for a wrongful eviction hearing on the next Monday, April 8, 2013.

Later that day, at approximately 5:30 p.m., Defendant Otis was on patrol and observed Plaintiff on the subject property in Ms. Gondenoky's apartment after he had been advised to not return to the property without proper eviction documentation.  (Docket no. 23-5 at 4.)  Defendant Otis returned to the River Rouge Police Department where he informed Defendant Mitchell of Plaintiff's presence on the property.  Defendant Otis was then dispatched to the property to find out why Plaintiff was there.  When Defendants Otis and Copeland arrived at the property, Defendant Otis knocked on the door and no one answered, but he could hear someone going down the basement stairwell, which was located just inside the front door.  Defendant Otis knocked again and the door was answered by Jasmine Smith.  While speaking with Ms. Smith and her boyfriend, Nolan Hardie, Defendants Otis and Copeland heard noises coming from the basement, and upon further investigation, they discovered Plaintiff hiding in the basement behind the furnace.  They subsequently escorted Plaintiff out of the basement and to the front door, after which Defendant Otis advised Plaintiff that he was under arrest for trespassing.

Defendant Otis submitted an affidavit in support of Defendants' Motion.  (Docket no. 38-9.)  In the affidavit, Defendant Otis attests that he contacted the City of River Rouge Building Department on March 31, 2013, and learned that Plaintiff did not own the subject property.  (*Id*. ¶ 5.)  Defendant Otis also attests that based upon his March 31, 2013 and April 1, 2013 investigations, there was an indication that Ms. Gondenoky and Mr. Gregory were occupants of the property, and they had not given Plaintiff permission to enter the premises on either day.  (*Id*. ¶ 8.)  Defendant Otis states that through his April 1, 2013 investigation, he learned that Plaintiff had re-rented the apartment to Mr. Hardie and Ms. Smith, had changed the locks on the apartment, and had locked Ms. Gondenoky and Mr. Gregory's belongings inside the apartment.  (*Id*. ¶ 6.)  Defendant Otis further attests that Plaintiff provided no proof of ownership for the property or any court documentation that allowed Plaintiff to evict Ms. Gondenoky and Mr. Gregory.  (*Id*. ¶ 7.)  Defendant Otis affirms that on these bases, he believed that there was probable cause that Plaintiff was trespassing on the property, and he arrested him accordingly.  (*Id*. ¶ 8.)

4.      *Post-Arrest Procedural Facts*

Plaintiff was charged with one count of misdemeanor criminal trespass and one count of contempt of court.  (Docket no. 19 ¶ 20.)  He was arraigned on April 3, 2013, at which he was given a $10,000, 10% cash/surety bond.  (Docket no. 19 ¶¶ 21; docket no. 23-1 at 12; docket no. 23-6.)  Plaintiff did not post bond, so he was subsequently transferred to the Wayne County Jail.  (Docket no. 19 ¶ 23.)  On April 9, 2013, Plaintiff met with the City Attorney for the City of River Rouge, who told Plaintiff that if he pleaded guilty to the charges against him, the attorney would recommend that Plaintiff receive credit for time served and that he be released from custody at his next court date.  (*Id.* ¶ 26.)  Plaintiff asserts that he told the City Attorney that he would not plead guilty to trespassing on property that he owned.  (*Id.*)  Plaintiff claims that the City Attorney asked him to sign a document stating that he offered Plaintiff a plea deal, but Plaintiff refused to sign it, and he was then transferred back to the Wayne County Jail.  (*Id.*)

On April 11, 2013, Plaintiff appeared before Judge Ciungan at the 25th District Court for a sentencing hearing on the charges of trespassing and contempt of court.  (Docket no. 19 ¶ 28; docket no. 38-7.)  When the judge asked Plaintiff why he was evicting Ms. Gondenoky before the court issued a writ of restitution on April 30, 2013, Plaintiff testified that he had an agreement with Ms. Gondenoky that she would move out before then.  (Docket no. 38-7 at 5-6.)  Ms. Gondenoky also appeared at the hearing and testified that she and Plaintiff had never entered into such an agreement.  (*Id.* at 6.)  She further testified that she allowed Plaintiff into her apartment to spray for pests, but instead Plaintiff threw all of her belongings out of the apartment and demolished them by pouring bleach on her clothes, and tearing and ripping everything.  (*Id.* at 6-7.)  Plaintiff produced a copy of the purported agreement at the hearing, which Ms. Gondenoky admitted contained her signature, but she claimed that Plaintiff altered the writing on the agreement after she signed it because the original agreement stated that she would vacate the property within thirty days.  (*Id.* at 8-11.)  After reviewing copies of the agreement, without deciding the authenticity of which, the state-court judge dropped the contempt charge against Plaintiff but advised that the writ of restitution would still not issue until April 30, 2013, after Plaintiff provided proof of payment of inspection and a certificate of occupancy.  (*Id.* at 12.)  With respect to the trespassing charge, the judge noted that Plaintiff pleaded guilty to the charge of trespassing on April 8, 2013, and therefore sentenced Plaintiff to nine days in the county jail with nine days credit.  (*Id.* at 4, 12.)

Plaintiff filed a motion to set aside the plea for trespassing on July 10, 2013, which was initially denied by the state-court judge.  (Docket no. 19 ¶ 30.)  Plaintiff then filed a motion for reconsideration and provided the court register of actions as an exhibit in support of his argument that the plea hearing never took place and that a guilty plea was never made by Plaintiff.  (Docket no. 19 ¶ 31; *see* docket no. 23-7.)  A hearing was held on Plaintiff's motion in October of 2013, at

which the state-court judge set aside the plea. (Docket no. 19 ¶ 31; *see* docket no. 23-8.)

(Docket no. 49 at 2-9.)

On February 12, 2016, Plaintiff initiated this action against Defendants City of River Rouge, River Rouge Police Department, Officer Otis, Officer Copeland, Officer Miller, Sergeant Mitchell, and several John Does pursuant to 42 U.S.C. § 1983, asserting claims of false and malicious arrest, false imprisonment, malicious prosecution, wrongful use of judicial process, and interference with a contractual relationship, as well as claims for attorney fees and punitive damages, with regard to his arrest and prosecution for trespassing. (Docket no. 1.) Plaintiff filed an Amended Complaint on April 11, 2016. (Docket no. 19.) In response, Defendants filed their initial Motion for Summary Judgment Pursuant to Rule 56 on Claims 1-5 and Motion to Dismiss for Failure to State a Claim Pursuant to 12(b)(6) on Claims 6 and 7. (Docket no. 23.)

The undersigned issued the above-cited Report and Recommendation regarding Defendants' initial Motion for Summary Judgment and to Dismiss on February 7, 2017, and recommended that the Motion be granted, except for Defendants' request for attorney's fees and costs, and that this matter be dismissed in its entirety. (Docket no. 49.) Subsequently, in a March 28, 2017 Order, the court (1) accepted in part and rejected in part the recommendation contained in the Report and Recommendation; (2) granted Defendants' Motion for Summary Judgment on Plaintiff's claims of malicious prosecution and wrongful use of judicial process; (3) denied Defendants' Motion for Summary Judgment on Plaintiff's false arrest, false imprisonment, and interference with a contractual relationship claims; (4) granted Defendants' Motion to Dismiss Plaintiff's claims for attorney's fees and punitive damages; (5) dismissed Defendants River Rouge Police Department, City of River Rouge, and John Does 1-10 from this matter; and (6) adopted the recommendation that Defendants' request for attorney's fees and

costs be denied.  (Docket no. 53.)  And upon Defendants' Motion for Reconsideration, the court dismissed Plaintiff's claim of interference with a contractual relationship.  (Docket nos. 56, 107.) Accordingly, the only claims that remain are Plaintiff's false arrest and false imprisonment claims against Defendants Otis, Copeland, Miller, and Mitchell.

After the entry of the March 28, 2017 Order, the parties continued to engage in discovery, which resulted in a slew of pretrial motions.  On November 15, 2017, the undersigned held a hearing regarding those motions and disposed of them in a corresponding Order dated November 17, 2017, which Order included the issuance of discovery sanctions against Plaintiff.  (Docket no. 118.).  In relevant part, the Order granted Defendants' Motion to Compel (docket no. 104) and ordered Plaintiff to (1) provide full and complete responses and produce documents responsive to Defendants' First and Second Sets of Interrogatories and Requests for Production without further objection within twenty-one (21) days; and (2) pay the reasonable expenses and attorney's fees that Defendants incurred in bringing the Motion pursuant to Federal Rule of Civil Procedure 37.  (Docket no. 118 at 6.)  The remaining details of the Order will not be restated at this juncture, but they will be discussed where necessary to address the parties' arguments throughout this Report and Recommendation.

Defendants filed the instant Motion for Summary Judgment on Plaintiff's remaining claims while the aforementioned pretrial motions were pending, in accordance with the dispositive motion deadline of October 13, 2017.  (Docket no. 110; *see* docket no. 55.) Defendants filed the instant Motion to Dismiss on December 21, 2017, for Plaintiff's Non-Compliance with the November 17, 2017 Order, specifically, for Plaintiff's failure to respond to Defendants' discovery requests as ordered.  These two Motions are the topics of this Report and Recommendation.

## B.  Governing Law

### 1.  Motion to Dismiss Standard

Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 37.  (Docket no. 126.)  Under Rule 37, the court may dismiss a matter in whole or in part if a party disobeys a discovery order or fails to attend its own deposition, serve answers to interrogatories, or respond to a request for inspection.  Fed. R. Civ. P. 37(b)(2)(A)(v), (d).  But the dismissal of an action as a sanction for discovery abuse is a sanction of last resort and may be imposed only if the court concludes that the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault.  *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).  Additional factors to consider are prejudice to the adversary party from the failure to cooperate, whether the dismissed party was warned that failure to cooperate could lead to dismissal, and whether less drastic sanctions were considered.  *Id.*

### 2.  Summary Judgment Standard

Defendants move for summary judgment on Plaintiff's remaining claims pursuant to Federal Rule of Civil Procedure 56.  (Docket no. 110.)  Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000).  Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915.  A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.    Analysis**

*1.    Defendants' Motion to Dismiss*

Defendants move to dismiss this matter pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(v) for failure to comply with the Court's November 17, 2017 Order.  (Docket no. 126.)  Specifically, Defendants assert that Plaintiff has failed to provide full and complete responses or produce any documents, without further objection, to Defendants' First and Second Sets of Interrogatories and Requests for Production.

Defendants explain that after the November 15, 2017 hearing, Plaintiff asked Defendants' counsel to re-send Defendants' discovery requests to him; Defendants' counsel re-sent the discovery requests to Plaintiff the next day.  (Docket no. 126 at 2-3; docket no. 126-2.)  Plaintiff

then submitted revised discovery responses to Defendants' First Set of Interrogatories and Requests for Production on November 28, 2017.  (Docket no. 126 at 3, 12; docket no. 126-3.)  The majority of Plaintiff's responses (*i.e.*, to Interrogatory nos. 1, 3, 5, 6, 8, 11-16, 20, and 21 and Request for Production (RFP) nos. 4-7, 13, 14, and 16)  consist of a statement indicating that the information or documents requested have already been turned over to the defense.  Plaintiff also makes objections to some of the discovery requests (*i.e.*, Interrogatory nos. 4, 6, 10, 19) on the bases that they are overbroad, request public information, and request information protected by the work product privilege.  Plaintiff did not provide any response to Interrogatory no. 7 or RFP nos. 1-3, 8, 9, 11, and 12.  And in response to Interrogatory no. 17, which requested information regarding Plaintiff's potential trial exhibits, Plaintiff responded, "will provided [sic] at another date with pretrial motion due to the defense changes [sic] of story's [sic] (lies)."

Plaintiff also submitted revised discovery responses to Defendants' Second Set of Interrogatories and Requests for Production on November 28, 2017.  (Docket no. 126 at 3; docket no. 126-4.)  In these revisions, Plaintiff objected to the two interrogatories as failing to comply with Federal Rules of Civil Procedure 36 and 26(b)(1).  (Docket no. 126-4 at 7.)  And in response to all three of the RFPs, Plaintiff indicated that he did not possess any of the documents requested; he also indicated that the documents requested in RFP no. 1 were public information that had already been turned over to the defense.  (*Id*. at 8.)

After reviewing Plaintiff's discovery responses, defense counsel emailed Plaintiff and informed him that his answers did not comply with the Court's Order requiring full and complete responses without further objection.  (Docket no. 126 at 4; docket no. 126-5.)  Counsel asked Plaintiff to correct his responses accordingly to avoid the need for any further court intervention.  (*Id*.)  Plaintiff's reply to defense counsel is reproduced verbatim below:

> I provided the answer to the best of my ability and within my acknowledgment. The answer are very similar to your response to m,y request. and I received no documents if you have issues with my answer then take it up with the court I will not supplemental my answer they are done to the best of my ability and my knowledge

(Docket no. 126-6 (grammatical and typographical errors in original).)

Nevertheless, Plaintiff submitted a second set of revised responses to Defendants' Second Set of Interrogatories and Requests for Production on December 7, 2017.  (Docket no. 126 at 3-4, 15; docket no. 126-4 at 15, 17.)   In these responses, Plaintiff objected to Defendants' Interrogatory nos. 23 and 24 on the grounds that they sought irrelevant information, violated the collateral source rule, and invaded Plaintiff's privacy.  (Docket no. 126-4 at 15.)  Also, with regard to Interrogatory no. 23, which requested information regarding any property owned by Plaintiff, he answered that any property he owns is listed with the Wayne County Recorder's Office, and is publicly available information.  (*Id.*)  And with regard to Interrogatory no. 24, which asked Plaintiff to identify his bank accounts, he answered that his bank account is at "Hungting bank," and he will not divulge his account information because he had been subjected to identity theft, and his bank told him not to divulge his information to anyone.  (*Id.*)  Plaintiff's responses to Defendants' RFP nos. 1 and 2 mirror his responses to Interrogatory nos. 23 and 24, respectively.  (*Id.* at 17.)   RFP no. 3 asked Plaintiff to produce a copy of a cashed check from Plaintiff's U.S. Bank account, and Plaintiff responded that he does not have a copy of the document requested and has no idea how to produce it.  (*Id.*)

Defendants assert that Plaintiff's interrogatory answers are non-responsive, that Plaintiff's objections are directly violative of the Court's Order, that Plaintiff has not provided all of the information to Defendants as he purports to have done, and that Plaintiff has not produced a single document through discovery that is responsive to any of Defendants' RFPs.  (Docket no.

126 at 13-18.) Defendants argue that Plaintiff's refusal to provide full and complete responses to their discovery requests without further objection is in blatant disregard and ignorance of the Court's November 17, 2017 Order, and they seek dismissal of this matter pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(v). (Docket no. 126 at 4-5, 11, 24.) In support of dismissal, Defendants argue that (1) Plaintiff's conduct is willful and demonstrative of his continued bad faith; (2) Plaintiff's refusal to provide complete answers to Defendants' discovery requests has prejudiced Defendants, particularly by adversely impacting their ability to investigate Plaintiff's alleged damages; (3) Plaintiff has been warned that his misconduct could result in the dismissal of his case on multiple occasions; and (4) the monetary sanctions previously imposed on Plaintiff have not motivated Plaintiff's compliance with the Court's Orders, the Federal Rules, or the Local Rules in any way. (*Id*. at 19-23.) In the alternative, Defendants ask the court to sanction Plaintiff by holding him in contempt and prohibiting him from claiming economic damages in this matter pursuant to Rule 37(b)(2)(A)(ii), given his refusal to answer Defendants' discovery requests regarding his alleged damages or mitigation thereof. (*Id*. at 5, 24.)

In response, Plaintiff argues that he has complied with discovery to the best of his ability and asserts that the document attached to his Response to Defendants' Motion as Exhibit A contains his answers to discovery. (Docket no. 130 at 2, 4, 6, 7.) Exhibit A is titled, "Plaintiff's Response to Defendant's [sic] Requests for Definition of His Claims for Damages as a Direct and Proximate Result of His False Arrest and Imprisonment at the Hands of Defendants," and it provides that "This is Plaintiff's answer to any and all interrogatories related to his damage claims and will be supplemented as sdoon [sic] as possible." (*Id*. at 14-17.) Plaintiff also argues against dismissal on the grounds that Defendants' discovery requests are irrelevant, Defendants have never demonstrated the relevance or admissibility of the discovery they seek, and the Court

never made any findings in its November 17, 2017 Order regarding the relevance of Defendants' discovery requests. (*Id*. at 4-5.) Plaintiff further argues that Defendants' counsel has engaged in the same conduct of which she accuses Plaintiff, namely, failing to provide any answers to Plaintiff's discovery requests. (*Id*. at 2, 7.)

Defendants reply that they did indeed argue the relevance of the information sought through their discovery requests in their Motion to Compel and that Plaintiff failed to meet his burden of establishing the lack of relevance of that information by failing to file a response to Defendants' Motion to Compel. (Docket no. 131 at 2, 4-6.) Defendants also assert that Plaintiff's argument that the Court failed to make a finding regarding the relevancy of the information, fails. (*Id*. at 2, 6-7.) Additionally, Defendants argue that Plaintiff's argument that Defendants have failed to comply with discovery is false, as they have answered each and every one of Plaintiff's discovery requests and provided documents pursuant to the rules of discovery, and that the argument is not properly before the court because Plaintiff has never filed a motion to compel. (*Id*. at 2, 7-8.)

As previously stated, a court considers four factors when determining the propriety of dismissal of an action as a sanction for discovery abuse: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the party seeking dismissal was prejudiced by the failure to cooperate; (3) whether the party to be dismissed was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were considered. *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990). "Although typically none of the factors is outcome dispositive, it is said that a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (citation omitted).

'"Contumacious' is defined as 'perverse in resisting authority' and 'stubbornly disobedient.'" *Bradley J. Delp Revocable Tr. v. MSJMR 2008 Irrevocable Tr.*, 665 F. App'x 514, 521 (6th Cir. 2016) (citing *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting *Webster's Third New International Dictionary* 497 (1986))).   "If dismissal was warranted by contumacious conduct, the importance 'of the remaining three factors' fades 'in the face of th[is] conclusion.'"   *Id.* (quoting *Knoll*, 176 F.3d at 366).   Each of the factors will be addressed below.

Plaintiff has asserted both in response to defense counsel's November 28, 2017 email and in response to Defendants' Motion to Dismiss that he has answered Defendants' discovery requests to best of his ability.   (*See* docket nos. 126-6, 130.)   Plaintiff's statement, standing alone, gives the Court pause about recommending dismissal, particularly in light of Plaintiff's *pro se* status.   Nevertheless, viewing this statement in conjunction with Plaintiff's previous conduct, Plaintiff's discovery responses, and Plaintiff's other filings in this matter, like the aforementioned "Exhibit A," the Court finds that Plaintiff's statement is disingenuous.   For example, Plaintiff responded to several of Defendants' RFPs by indicating that he had already turned the requested documents over to the defense, but Defendants counter that they have not received a single document from Plaintiff related to their discovery requests.   Plaintiff also failed to provide any response whatsoever to several relatively simple discovery requests, which is inconsistent with his ability to respond to similar discovery requests and with his ability to prosecute this litigation.   Additionally, certain of Plaintiff's responses, *e.g.*, that he has no information regarding his criminal history (*see* docket no. 126-3 at 9) and that he has no documents related to his financial accounts (*see* docket no. 126-4 at 8), are incredible.

Moreover, with regard to Plaintiff's Exhibit A, Plaintiff describes the exhibit in his Response brief's Index of Exhibits as "Plaintiff [sic] Claims for damages which was provided to the defense On May 15, of 2017." (Docket no. 130 at 12.) But in the text of his Response to Defendants' Motion, Plaintiff indicates that he provided Exhibit A to Defendants on September 12, 2017. (*Id*. at 7-8.) Notably, Exhibit A is signed but not dated, and Plaintiff has provided no certificate of service that demonstrates that he served Defendants with the exhibit in either May or September of 2017. Rather, Plaintiff's Exhibit A, which is "Plaintiff's answer to any and all interrogatories related to his damage claims," seemingly appears to be a document that Plaintiff created for the first time in January 2018 when faced with Defendants' Motion to Dismiss, in an effort to avoid dismissal for his failure to respond to Defendants' discovery requests regarding damages.

Furthermore, Plaintiff continues to object to Defendants' discovery requests in spite of the Court's clear order that he respond *without further objection*. Notably, Plaintiff waived any objections to Defendants' discovery requests on relevance or on other grounds by failing to file proper objections to the discovery requests during the initial response period and by failing to respond to Defendants' Motion to Compel. Plaintiff also indicated in his November 28, 2017 email to defense counsel and in his Response to Defendants' Motion to Dismiss that he did not and would not provide full and complete responses to Defendants' discovery requests because he was not satisfied with Defendants' responses to his discovery requests. This is not a valid basis on which to object to an adversary's discovery request or, more importantly, on which to disobey a court order. The above discussion demonstrates that Plaintiff willfully refused to provide full and complete responses to Defendants' discovery responses without further objection, in defiance of the Court's November 17, 2017 Order. Plaintiff's conduct in this regard is a

reflection and continuance of the uncooperative and disobedient behavior and abuse of the legal process, *i.e.*, contumacious conduct, that Plaintiff has exhibited throughout this litigation.

Even if Plaintiff's Exhibit A, which does provide some explanation regarding Plaintiff's alleged damages, was submitted to Defendants in May or September of 2017, as Plaintiff avers, it does not cure the prejudice that Defendants have suffered as a result of Plaintiff's failure to respond to their discovery requests regarding damages. This is because Exhibit A is not fully responsive to all of Defendants' discovery requests; there is no indication that Plaintiff produced any documents or other evidence in conjunction with Exhibit A that illustrate, describe, summarize, or support his explanation of damages therein; and there is no indication that Plaintiff supplemented Exhibit A as he so indicated that he would. Simply put, Plaintiff's non-compliance with the Court's November 17, 2017 Order to fully respond to Defendants' discovery requests without objection has prejudiced Defendants' ability to properly investigate and defend against Plaintiff's claims for damages.

The Court has repeatedly warned Plaintiff that his failure to cooperate in discovery, to comply with the court's orders, and to act in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of Michigan may result in sanctions, including the dismissal of this action. For example, on June 6, 2017, the Court ordered Plaintiff to appear for his deposition on June 7, 2017, and to take the deposition of Defendant Otis on June 22, 2017. (Docket no. 71.) The Court also reminded Plaintiff in the Order that despite his status as a *pro se* litigant, he must familiarize himself with and follow the Federal and Local Rules and that his failure to follow those rules or communicate with defense counsel in good faith during the discovery process may result in sanctions. (*Id.* at

6.)  Notably, the Court issued this reminder and warning instead of issuing monetary sanctions against Plaintiff.

Plaintiff's subsequent actions, however, demonstrate that Plaintiff did not heed the Court's June 6, 2017 Order, its instructions to learn and follow the Rules, or its warning regarding sanctions.  The depositions did not proceed as ordered; specifically, Plaintiff walked out of his deposition after sixteen minutes, and inexplicably failed to appear to take Defendant Otis's court ordered deposition.  Additionally, in the following months, Plaintiff filed several motions and other documents that failed to comply with the Federal and Local Rules.  The Court struck one of these non-compliant filings made by Plaintiff (docket no. 81) via text-only order on July 6, 2017.  The Order specifically advised that the filing was stricken, in relevant part, because it violated Rule 5(f) of the Electronic Filing Policies and Procedures.  Nevertheless, two weeks later, Plaintiff filed a document that suffered from the same deficiency as the one stricken. (Docket no. 85.)

At that juncture, it became evident that the Court's previous written warning and the striking of Plaintiff's filing had not  been sufficiently effective in apprising Plaintiff of the importance and necessity of following the Rules or the consequences for violating the Rules. Accordingly, at the November 15, 2017 hearing and in the corresponding November 17, 2017 Order, the Court sanctioned Plaintiff for discovery violations related to his conduct surrounding his and Defendant Otis's depositions, his false designation of an expert witness, and his unjustified failure to respond to Defendants' discovery requests.  (*See* docket nos. 118, 121.) Specifically, the Court ordered Plaintiff to pay the reasonable attorney's fees and costs incurred by Defendants in attending Plaintiff's June 7, 2017 deposition and Defendant Otis's June 22, 2017 deposition, filing their related Motion for Sanctions, filing their Motion to Strike Plaintiff's

Expert Witness List, and filing their Motion to Compel.   The Court, however, denied

Defendants' request for additional fees and costs, in favor of issuing one last warning to Plaintiff.

(Docket no. 121 at 47-48.)  The warning was aptly described in the November 17, 2017 Order:

> At the end of the hearing, the Court noted that the majority, if not all, of the
> motions filed by Plaintiff are procedurally deficient despite previous written
> warnings administered to Plaintiff by the Court.  (*See* docket no. 71 at 6.)  The
> Court also noted that many of the motions addressed at the hearing, and the time
> and expense expended by Defendants and the Court in addressing the motions,
> may have been avoided through Plaintiff's knowledge of and compliance with the
> Rules.  The Court then issued a strict verbal order to Plaintiff to review, learn, and
> adhere to the Federal Rules of Civil Procedure and the Eastern District of
> Michigan's Local Rules (including the Electronic Filing Policies and Procedures)
> before proceeding with any future filings in this matter.  The Court also issued a
> final warning to Plaintiff that any further unjustified non-compliance with the
> Rules will result in sanctions pursuant to Federal Rule of Civil Procedure 11 and
> Local Rule 11.1, which sanctions may include the striking of pleadings, monetary
> sanctions, and the dismissal of Plaintiff's case.

(Docket no. 118 at 3-4.)

In spite of the Court's instructions, warnings, and sanctions, Plaintiff continues to thumb

his nose at the rules and orders of this court by disobeying the Court's November 17, 2017 Order

to provide full and complete responses to Defendants' discovery requests without further

objection.  Given Plaintiff's contumacious pattern of non-compliance and the fact that he has

been undeterred by lesser sanctions, dismissal of Plaintiff's claims is appropriate.  Accordingly,

Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) for Plaintiff's Non-

Compliance With Court Order (docket no. 126) should be granted.   Notwithstanding this

recommendation, the undersigned will proceed to address Defendants' Motion for Summary

Judgment.

### 2.    *Defendants' Motion for Summary Judgment*

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983.  To prevail on a

Section 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law,

(3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted).  There is no dispute that Defendants were persons acting under color of state law.  Thus, the only remaining issue under a Section 1983 analysis is whether Defendants deprived Plaintiff of a constitutional right.

As previously stated, Plaintiff's claims of false arrest and false imprisonment are the only claims that remain outstanding in this matter.  The Fourth Amendment protects the right of individuals to be free from improper arrest and detention.  U.S. Const. amend. IV ("The right of people to be secure in their persons . . .  against unreasonable seizures . . . shall not be violated.").  "'By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty.'"  *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (quoting *Baker v. McCollan,* 443 U.S. 137, 142-43 (1979)).  "Thus, arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law."  *Id*. (citing *Michigan v. DeFillippo,* 443 U.S. 31, 36 (1979)).

"'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *DeFillippo*, 443 U.S. at 37 (citations omitted).  "Probable cause is assessed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (quoting *Kostrzewa v. City of Troy,* 247 F.3d 633, 639 (6th Cir. 2001)).  Accordingly, "[t]he inquiry 'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of

the arrest,' where supported by 'reasonably trustworthy information.'" *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quoting *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004); *Beck v. Ohio,* 379 U.S. 89, 91 (1964)).

"[I]n obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence.  Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).  However, "[n]o overly-burdensome duty to investigate applies to officers faced with the prospect of a warrantless arrest." *Logsdon*, 492 F.3d at 341.  "In initially formulating probable cause, they need not 'investigate independently every claim of innocence.'" *Id.* (quoting *Gardenhire,* 205 F.3d at 318); *see also U.S. v. Reed*, 220 F.3d 476, 478 (6th Cir. 2000) ("Officers are not required to rule out every possible explanation other than a suspect's illegal conduct before making an arrest.").  "And after the officer determines, on the basis of the facts and circumstances known to him, that probable cause exists, the officer has no further duty to investigate or to search for exculpatory evidence." *Logsdon*, 492 U.S. at 341 (citing *Ahlers v. Schebil,* 188 F.3d 365, 371 (6th Cir. 1999); *Criss,* 867 F.2d at 263).  "Even if the circumstances suggest that a suspect may have an affirmative defense, if a reasonable officer would not 'conclusively know' that the suspect is protected by the defense, then he is free to arrest the suspect provided there is probable cause to do so." *Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002).  "'In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.'" *Id*. at 872 (quoting *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir. 1995)).

Here, Plaintiff was arrested and prosecuted for trespassing under Michigan Compiled Laws § 750.552, which prohibits a person from:

> (a) Enter[ing] the lands or premises of another without lawful authority after having been forbidden to do so by the owner or occupant or the agent of the owner or occupant[; or]
>
> (b) Remain[ing] without lawful authority on the land or premises of another after being notified to depart by the owner or occupant or the agent of the owner or occupant.

Mich. Comp. Laws § 750.552.  Therefore, in order to have had probable cause to arrest Plaintiff, Defendants had to reasonably believe, based on the facts and circumstances known to them at the time of arrest, that Plaintiff entered or remained on the subject property without lawful authority after being forbidden to do so or being notified to depart by Ms. Gondenoky or her agent.

Defendants Otis, Copeland, and Mitchell have submitted Unsworn Declarations to the court that describe, under penalty of perjury, the facts and circumstances known to them at the time of Plaintiff's arrest.[1]   (Docket nos. 110-13, 110-18, 110-20.)   The following factual summary is garnered from those declarations.  Defendant Otis declares that he was dispatched to the subject property on March 31, 2013, for a civil dispute.  Upon arrival, he observed a large pile of furniture, clothing, and children's toys outside the property.  He learned that Ms. Gondenoky and her boyfriend, Mr. Gregory, were residing in and renting the first-floor apartment from Plaintiff and that Plaintiff had moved their belongings out of the apartment without their permission and without court documentation allowing him to do so.  Rather, they had only given Plaintiff permission to enter the apartment to spray for insects.  Plaintiff informed Defendant Otis that he owned the property, but Defendant Otis asserts that Plaintiff could not produce proof of ownership upon request.  Plaintiff also told Defendant Otis that he could throw

---

[1] Defendant Miller has also submitted an Unsworn Declaration to the court (docket no. 110-19), which will be addressed separately below.

Ms. Gondenoky's and Mr. Gregory's belongings on the street because he had a document, which he had drafted, indicating that they had given up occupancy. Plaintiff, however, did not show Defendant Otis a document signed by him and Ms. Gondenoky. Defendant Otis also learned that there was a matter already pending in court between the parties. Defendant Otis then allowed Mr. Gregory to place his and Ms. Gondenoky's belongings back in the apartment and told Plaintiff that he was not to return to the apartment without proper eviction documentation or judicial paperwork that allowed him to do so. (Docket no. 110-13 ¶¶ 5-6.)

Defendant Otis declares that he drove past the property the next day, April 1, 2013, at approximately 5:30 p.m. and observed Plaintiff in the apartment, but he did not observe either Ms. Gondenoky or Mr. Gregory in the apartment at that time. He then returned to the police department and informed his supervisor, Defendant Mitchell, of the prior day's events and the fact that he had just seen Plaintiff on the property. At 6:08 p.m., the police department received a call regarding a breaking and entering in progress at the property, and Defendant Mitchell dispatched Defendants Otis, Copeland, and Miller to the property.[2] (Defendant Otis declares that at some point prior to being dispatched that evening, he learned that Plaintiff no longer owned

---

[2] Plaintiff argues that Defendants' Motion for Summary Judgment should be denied because Defendants have changed their story by adding facts regarding the call for breaking and entering and have therefore created a genuine issue of material fact for the jury. (Docket no. 115.) As Plaintiff points out, Defendant Otis's declaration submitted in support of Defendants' first Motion for Summary Judgment does not include any facts regarding a breaking and entering call. (*See* docket no. 38-9.) Nevertheless, Plaintiff's argument lacks merit, for two reasons. First, Defendants filed their first Motion for Summary Judgment before the parties engaged in discovery in this matter. Now that the parties have gathered additional evidence through the discovery process, it is logical that Defendants' second Motion for Summary Judgment includes an expanded set of facts not previously mentioned in the first Motion. Second, as Defendants point out, their second Motion for Summary Judgment is not the first time that evidence regarding the breaking and entering call was submitted in this matter. (*See* docket no. 119 at 5-6 (citing docket no. 42).) In support of their September 23, 2016 Response to Plaintiff's Supplemental Response to Defendants' first Motion for Summary Judgment, Defendants submitted a log of calls for assistance that the River Rouge Police Department received from the subject property. (Docket no. 42 at 36-41.) This call log reflects that the Police Department received a call on April 1, 2013 regarding a breaking and entering at the property. (*Id.* at 40.) Accordingly, Defendants did not change their story or "fabricate" the breaking and entering call for purposes of their second Motion for Summary Judgment, as Plaintiff argues. Defendants' addition to their Second Motion for Summary Judgment of the fact that they responded to a breaking and entering call at the property on the evening of April 1, 2013 does not create the genuine issue of material fact required to defeat Defendants' Motion for Summary Judgment.

the property.)   Upon arrival at the property, Defendants Otis and Copeland approached, and Defendant Otis knocked on the door of the apartment.   They then heard footsteps on the stairs, which were immediately inside the door.   After knocking again, Jasmine Smith answered the door.   Ms. Smith informed Defendants Otis and Copeland that she and her boyfriend, Nolan Hardie, were the new tenants of the apartment and that Plaintiff had told them that he could lease the apartment to them despite Ms. Gondenoky and Mr. Gregory's current tenancy because it was his property.   Defendants Otis and Copeland attempted to ascertain Plaintiff's whereabouts and were led to believe that he had left the premises.   They then heard noises in the basement, and upon further investigation, Defendant Copeland located Plaintiff crouching behind a furnace. When Defendant Copeland asked Plaintiff why he was hiding behind a furnace, he couldn't provide an explanation.   Defendant Copeland brought Plaintiff upstairs to the doorway, at which point Defendant Otis asked Plaintiff if he had any judicial paperwork allowing him to enter the apartment; he did not.   (Defendant Otis declares that evictions for matters in the 25th District Court are handled by the court bailiff, not individual landlords, after the landlord obtains a court order of eviction.)   Defendants Otis and Copeland also learned during their investigation that Plaintiff had the locks on the apartment changed.   Additionally, Defendant Otis witnessed Mr. Hardie apologize to Mr. Gregory on the basis that the prior day, Plaintiff had asked him to repair a door but instead had him move Ms. Gondenoky's and Mr. Gregory's belongings out of the apartment.   Defendant Copeland declares that he learned of the prior day's events during the investigation that evening.   Defendants Otis and Copeland then arrested Plaintiff for trespassing based on the above information.

In recommending dismissal of Defendants' first Motion for Summary Judgment, the undersigned previously found that a lesser-developed but substantially similar set of facts and

circumstances known to Defendants supported a finding of probable cause to arrest Plaintiff for trespassing.  The facts and circumstances described above by Defendants Otis, Copeland, and Mitchell could also support such a finding.  However, Plaintiff has submitted a sworn affidavit and supporting evidence that directly contradicts Defendant Otis's declaration regarding certain facts known to him at the time of arrest.  Namely, Plaintiff attests that on March 31, 2013, he provided Defendant Otis with a copy of his quit claim deed to the property as well as a copy of the "Tenant Vacant Notice and Affidavit" signed by Ms. Gondenoky, which indicated that she had vacated the apartment as of March 28, 2013.  (Docket no. 115 at 34-36; docket no. 35 at 11-13, 17, 19.)  This contradicts Defendant Otis's declarations that Plaintiff could not provide him with any proof of ownership of the property when requested and that Plaintiff did not show him a document signed by Plaintiff and Ms. Gondenoky.  (*See* docket no. 110-13 ¶¶ 6.f., 6.h.)  Indeed, the "Tenant Vacant Notice" is signed by Ms. Gondenoky.  (*See* docket no. 35 at 19.)

On a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party.  The Court cannot weigh evidence or determine credibility when deciding a motion for summary judgment.  *See Ojemudia v. Rite Aid Servs., L.L.C.,* 540 F. Supp. 2d 855, 868 (E.D. Mich. 2008) (Rosen, J.) (citing *Anderson,* 477 U.S. at 255) ("[A]ssessing credibility is a matter for a jury; a court cannot make credibility determinations on summary judgment.")  Plaintiff's affirmation and evidence, if believed, could permit a reasonable jury to find that Defendants lacked probable cause when they arrested Plaintiff for trespassing.  Therefore, a genuine dispute of material fact exists regarding what facts were known to Defendants at the time of Plaintiff's arrest and there could be more than one reasonable determination regarding whether Defendants had probable cause to arrest Plaintiff.  Accordingly, Defendants' Motion for Summary Judgment should be denied in this regard.

Defendants' Motion should likewise be denied with regard to qualified immunity, as summary judgment based on a qualified immunity defense is not appropriate in a § 1983 action "if there is a factual dispute (*i.e.*, a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights."   *Poe v. Haydon,* 853 F.2d 418, 426 (6th Cir. 1988) (citation omitted).

Defendants also argue that Defendant Miller is entitled to summary judgment because he was a non-supervising patrol officer who was not involved in the arrest of Plaintiff.  (Docket no. 110 at 27-28.)  Indeed, to prevail under § 1983, a plaintiff must show that each defendant was personally involved in, or otherwise authorized, the alleged unconstitutional conduct.  *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff alleges in the Amended Complaint that Defendant Miller is a supervising officer with the River Rouge Police Department and that he is vicariously liable for the actions of Defendants Otis and Copeland because he approved their allegedly unconstitutional arrest of Plaintiff.  (Docket no. 19 ¶ 34.)  Defendant Miller, however, has submitted an Unsworn Declaration to the court under the penalty of perjury in which he explains that he was working as a part-time patrol officer for the City of River Rouge in April of 2013, and that he did not have any supervisory authority in that position.  (Docket no. 110-19 ¶¶ 2, 4.)  He asserts that he was assigned to patrol vehicle RR29 and that he was dispatched to the property at issue on April 1, 2013 in response to a complaint of breaking and entering, but he was cleared from the scene within ten (10) minutes.  (*Id*. ¶¶ 5-6.)  Defendant Miller further asserts that when he was at the property, he did not approach the house, go inside the house, have any involvement in Plaintiff's arrest, or provide any input that led to Plaintiff's arrest.  (*Id*. ¶ 7.)

Defendant Miller's Declaration is supported by (1) Defendant Otis's Declaration, in which he states that Defendant Miller left the property soon after his arrival and was not involved at the scene (docket no. 13 ¶ 7.g.); (2) the Event Report regarding the incident, which reflects that Defendant Miller's patrol vehicle arrived at the property at 6:09 p.m. and was cleared from the property at 6:19 p.m. (docket no. 110-16 at 3); (3) the City of River Rouge Police Department Daily Assignment and Prisoner Check Log, which shows that Defendant Miller made zero arrests during his shift on April 1, 2013 (docket no. 110-17 at 2); (4) Defendant Copeland's Declaration, in which he states that Defendant Miller was dispatched to the property but left shortly after arrival and was not involved at the scene (docket no. 110-18 ¶ 5.d.); and (5) Defendant Mitchell's Declaration, in which he explains that Defendant Miller was a part-time officer and had no supervisory authority (docket no. 110-20 ¶ 5).

Defendant Miller has met his burden of showing an absence of evidence to support Plaintiff's case against him through the citation of the foregoing evidence.  In light of this evidence, Plaintiff was required to submit significant probative evidence to show that a genuine issue of material fact regarding Defendant Miller's involvement in the arrest exists for trial. Plaintiff has failed to do so.  Notably, Plaintiff did not address this portion of Defendant's Motion for Summary Judgment in his Response brief, and he has not provided evidence to the court to contradict Defendant Miller's statements and the evidence submitted in support thereof. Plaintiff has failed to demonstrate the requisite personal involvement of Defendant Miller in his arrest.  Accordingly, summary judgment should be entered in favor of Defendant Miller.

### D.      Conclusion

For the above-stated reasons, the court should **GRANT** Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) for Plaintiff's Non-Compliance With Court Order

(docket no. 126) and dismiss this matter in its entirety.  Additionally and alternatively, the court should **GRANT** Defendants' Motion for Summary Judgment Pursuant to Rule 56 on Claims 1 and 2 (docket no. 110) with regard to Plaintiff's claims against Defendant Miller and **DENY** Defendants' Motion for Summary Judgment with regard to Plaintiff's claims against Defendants Otis, Copeland, and Mitchell.

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  May 30, 2018         <u>s/ Mona K. Majzoub</u>
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  May 30, 2018         <u>s/ Leanne Hosking</u>
                                  Case Manager